IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:22-cv-01292

JOHN MEGGS, an Individual, and
ACCESS 4 ALL, INC., a Florida Non-Profit Corporation

       Plaintiffs,

vs.

DCI REAL ESTATE NORTH ACADEMY LLC, a Colorado Limited Liability Company,

       Defendant.

_____/

# COMPLAINT

### Introduction

Plaintiffs, JOHN MEGGS, an individual, and ACCESS 4 ALL, INC., a Florida Non-Profit Corporation ("Plaintiffs" or "Plaintiffs"), on their behalf and on behalf of all other-mobility impaired individuals similarly situated hereby sues the Defendant, DCI REAL ESTATE NORTH ACADEMY LLC, a Colorado Limited Liability Company ("Defendant"), for injunctive relief, damages, attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. §12181 *et seq.* ("ADA") and the Colorado Anti-Discrimination Act, C. R. S. § 24-34-601 *et seq.* ("CADA").

### The Parties

1.    Plaintiff, JOHN MEGGS, is an individual over eighteen years of age and is otherwise sui juris. Although a resident of California, Mr. Meggs splits his time between California and Colorado.

2. Plaintiff, ACCESS 4 ALL, INC., is a non-profit corporation with a mission of ensuring enjoyment and equal access for disabled persons in all places of public accommodation. This entity was formed under the laws of the State of Florida and remains in good standing.

3. Defendant, DCI REAL ESTATE NORTH ACADEMY LLC, a Colorado Limited Liability Company, owns, leases, leases to, or operates a place of public accommodation, in this instance a restaurant, alleged by the Plaintiffs to be operating in violation of Title III of the ADA and the CADA.

## Jurisdiction and Venue

4. Defendant's property is a restaurant know as Texas T-Bone Steakhouse ("Texas T-Bone" or the "Restaurant") located at 5245 North Academy Boulevard, Colorado Springs, CO 80918, El Paso County ("Subject Property").

5. Venue is properly located in the District of Colorado because venue lies in the judicial district of the property situs. The Defendant's property is located in and does business within this judicial district.

6. Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. §1343, this Court has been given original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.[1]

7. Jurisdiction over the state law claim vests with this Court pursuant to 28 U.S.C § 1367.

8. The Defendant, DCI REAL ESTATE NORTH ACADEMY LLC, owns and/or operates a place of public accommodation as defined by the ADA and the regulations

---

[1] *See, also*, 28 U.S.C. § 2201 and 28 U.S.C. § 2202

implementing the ADA. The Defendant is thus required to comply with the obligations of the ADA.[2]

9. Plaintiff, JOHN MEGGS, is an individual with disabilities as defined by and pursuant to the ADA. Mr. Meggs is a paraplegic, with no use of his legs, stemming from a severe spinal cord injury and therefore has a physical impairment that substantially limits many of his major life activities[3] including, but not limited to, not being able to walk or stand. Mr. Meggs, at all times, requires the use of a wheelchair to ambulate.

10. Plaintiff organization, ACCESS 4 ALL, INC., is comprised of individuals with disabilities, as defined by the ADA. The primary purpose of this organization is to represent the interest of its members by ensuring that they are not discriminated against at places of public accommodation.

**Factual Context**

11. Mr. Meggs is a staunch advocate of the ADA. Since becoming aware of his rights, and their constant infringement, he has dedicated his life to this cause so that he, and others like him, may have full and equal enjoyment of public accommodations without the fear of discrimination and repeated exposure to architectural barriers.

12. Mr. Meggs encounters architectural barriers at the majority of the public places he visits. Seemingly trivial architectural features such as parking spaces, ramps, and door handles are taken for granted by the non-disabled but, when implemented improperly, are cumbersome, arduous and even dangerous for him and other wheelchair users.

13. The barriers to access that Mr. Meggs experiences at differing places of public

---

[2] 28 C.F.R. § 36.201(a) and 28 C.F.R. § 36.104
[3] as defined by 28 C.F.R. § 36.105(b)(1-2)

accommodation are similar in nature. For example, he is repeatedly faced with sloping in parking lots, cracks in sidewalks and asphalt, and improper restrooms and water closets (even when designated "accessible" or "handicapped"). He is often angered and disheartened by the repetitiveness of the complaints he is forced to make to employees and management, to no avail. Mr. Meggs is fully aware that the only way to affect change is through the ADA.

14. Mr. Meggs has visited the Subject Property on multiple occasions, his most recent visit occurred on or about April 15, 2022. On this occasion Mr. Meggs visited the Subject Property as a bone fide purchaser in an attempt to avail himself of the goods and services offered to the public within, but found that the Subject Property contained many violations of the ADA, both architecturally and in policy.

15. The Subject Property is not the type of restaurant that requires reservations, but Mr. Meggs intends to return on or about August 1, 2022, and/or on or about November 1, 2022, during his next visits to the Denver area - where he is a frequent traveler, regularly conducts business, and is speculating on property. He intends to revisit the Subject Property not only as a bone fide purchaser but also to monitor any progress made with to respect to ADA compliance.

16. Mr. Meggs has personally encountered exposure to architectural barriers and otherwise harmful conditions that have endangered his safety at the Subject Property.

17. The ADA has been law for over thirty (30) years and the Subject Property remains non-compliant. Thus, the Plaintiffs have reasonable grounds to believe that they will continue to be subjected to discrimination by the Defendant.

18. Mr. Meggs has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property, as described, but not necessarily limited to, the barriers he has personally experienced which are listed in

paragraph 23 of this Complaint.

19. Following any resolution of this matter Mr. Meggs will ensure that the Subject Property undertakes the remedial work that is required under the appropriate standard and is compliant with the ADA. This reinspection will occur as set forth in the parties' settlement agreement or as ordered by this Court.

## COUNT I
### Violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*.

20. The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

21. The Defendant has discriminated against the Plaintiffs, and others similarly-situated, by denying access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the Subject Property, as prohibited by the ADA.

22. A preliminary ADA inspection of the Defendant's property has shown that violations of the ADAAG and the 2010 ADA Standards currently exist.

23. The following are architectural barriers and violations of the ADA that Mr. Meggs has personally encountered during his visits to the Subject Property:

**Accessible Parking, Exterior Accessible Route, Path of Travel, and Entrance Access**

a. The designated accessible parking spaces throughout the Subject Property contain sloping and cross-sloping beyond the allowable limits. The accessible parking also lacks adequate access aisles/van access aisles as they contain sloping, cross-sloping, and fail to provide proper identification signage; the foregoing barriers are a violation of ADAAG and Section

502 of the 2010 ADA Standards. The lack of adequate access aisles and the presence of inaccessible parking spaces has forced Mr. Meggs to park in open areas of the parking lot where he can freely access his vehicle.

b. The accessible ramp used to travel from the parking area to the entrance of the restaurant contains excessive sloping, in violation of Section 4.8 of the ADAAG and Section 405 of the 2010 ADA Standards. The excessive sloping has presented Mr. Meggs with a tipping hazard and endangers wheelchair users.

c. The exterior accessible route from the sidewalk and parking areas to the restaurant is not compliant; violations of ADAAG Section 4.3 and Sections 302.3, 402, 403, 405 and 406 of the 2010 ADA Standards exist upon the route. Mr. Meggs was forced to travel through sloping, cross-sloping, abrupt changes of level, and gaps in the surface to reach the restaurant; these barriers present a tipping hazard and have endangered his safety.

d. The Subject Property fails to provide a safe, compliant, and accessible route to the street or sidewalk; in violation of ADAAG and Section 206.2.1 of the 2010 ADA Standards. Due to this barrier Mr. Meggs could not access the Subject Property from those areas, limiting his options for access.

**Access to Goods and Services**

e. Texas T-Bone fails to provide the requisite number of accessible dining tables in violation of ADAAG and Section 902 of the 2010 ADA Standards. Due to the lack of accessible tables Mr. Meggs has been unable to dine in a comfortable manner.

f. Payment counters throughout Texas T-Bone are mounted beyond the reach of Mr. Meggs and equal facilitation is not provided through policy; a violation of ADAAG and Sections 308 and 904 of the 2010 ADA Standards. A lowered portion at the bar is not provided to

those in wheelchairs – thus Mr. Meggs is precluded from service at the bar.

**Restrooms**

g. The restrooms within Texas T-Bone are not ADA compliant and are unsafe for use by Mr. Meggs. The barriers to access personally experienced by Mr. Meggs within the restrooms include inaccessible water closets which lack proper controls, improper grab bars, improperly mounted mirrors, improper door hardware, and flush controls mounted on the wall side; in violation of ADAAG and Section 601 of the 2010 ADA Standards.

h. The restrooms provide dispensers which are mounted beyond Mr. Meggs' reach, a violation of ADAAG and Section 308 of the 2010 ADA Standards. While using the restroom Mr. Meggs could not access the dispensers due to their improper location.

i. The mirror inside the restroom is mounted too high, a violation of ADAAG and Section 604 of the 2010 ADA Standards. Mr. Meggs could not make use of the mirror.

j. The lavatories located within the restrooms lack the proper knee and toe clearance required, in violation of ADAAG and Section 606 of the 2010 ADA Standards. Mr. Meggs could not wash his hands in the restroom because he could neither approach nor reach the sinks.

k. The restrooms contain improper centerlines for the water closets and flush controls which are mounted on the wall side; a violation of ADAAG and Section 604 of the 2010 ADA Standards. Mr. Meggs could not access the flush controls due to their improper location; thus Mr. Meggs has been unable to make full use of these restrooms without assistance.

l. The stall door within the restroom is not self-closing and lacks proper hardware, a violation of Section 604 of the 2010 ADA Standards. Once inside the stall Mr. Meggs could not close the door without assistance.

24. Each of the foregoing violations is also a violation of the ADA Standards for Accessible Design, originally published on July 26, 1991 and republished as Appendix D to 28 C.F.R. part 36 ("1991 Standards"); the "2004 ADAAG", which refers to ADA Chapter 1, ADA Chapter 2, and Chapters 3 through 10 of the Americans with Disabilities Act and the Architectural Barriers Act Accessibility Guidelines, which were issued by the Access Board on July 23, 2004 and codified at 36 C.F.R. § 1191, appendix B and D; and the 2010 Standards for Accessible Design ("2010 ADA Standards"), as promulgated by the U.S. Department of Justice.[4]

25. The discriminatory violations described in paragraph 23 may not be an exhaustive list of the ADA violations that exist at the Subject Property, but they are the result of a preliminary inspection conducted by the Plaintiffs and include all those personally experienced by Mr. Meggs. Plaintiffs require thorough inspection of the Defendant's place of public accommodation to photograph and measure the architectural barriers which exist at the Subject Property and violate the ADA.

26. Mr. Meggs, and all others similarly situated, will continue to suffer discrimination, injury and damage without the immediate relief provided for by the ADA and requested herein.

27. Defendant has discriminated against Mr. Meggs, and all those similarly situated, by denying him access to full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of the ADA.

28. Defendant continues to discriminate against Mr. Meggs, and all those similarly-situated, by failing to remove architectural barriers, and communication barriers that are structural

---

[4] 28 C.F.R. § 36.104

in nature.[5]

29. Defendant continues to discriminate against Mr. Meggs, and all those similarly-situated, by failing to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities.[6]

30. Defendant continues to discriminate against Mr. Meggs, and all those similarly situated, by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated, or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.[7]

31. If the Defendant's facility is one which was designed and constructed for first occupancy after January 26, 1993[8] then the Defendant's facility must be readily accessible to and useable by individuals with disabilities in accordance with the 1991 Standards.

32. Pursuant to 28 C.F.R. § 36.304(a)(1) "any alteration" made to the Subject Property after January 26, 1992, must have been made so as to ensure that, to the maximum extent feasible, the altered portions of the Subject Property are readily accessible to and usable by individuals with disabilities, including individuals, like Mr. Meggs, who use wheelchairs. An alteration is deemed to be undertaken after January 26, 1992, if the physical alteration of the property begins after that date.[9]

33. Pursuant to 28 C.F.R. § 36.304(a) Defendant shall remove all existing architectural

---

[5] 42 U.S.C. § 12181(b)(2)(A)(iv)
[6] 42 U.S.C. § 12181(b)(2)(A)(ii)
[7] 42 U.S.C. § 12181(b)(2)(A)(iii)
[8] as defined by 28 C.F.R. § 36.401(a)(2)
[9] 28 C.F.R. § 36.402(a)(2)

barriers, including communication barriers that are structural in nature, where such removal is readily achievable.

34. 28 C.F.R. § 36.304(d)(2)(i) controls with respect to the corresponding technical and scoping specification to which each element at the Subject Property must comply with or be modified to meet. Those are defined as follows:

    A.    Elements that have not been altered since on or after March 15, 2012, must comply with the 1991 Standards.

    B.    Elements that have existed prior to and have not been altered since on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with either the 1991 Standards or the 2010 Standards.

    C.    Elements that have been altered on or after March 15, 2012 that do not comply with the 1991 Standards must be modified (to the extent readily achievable) to comply with the 2010 Standards.

35. Plaintiffs are not required to notify Defendant of their violation of the ADA nor their ongoing discrimination prior to the filing of this action. To that end, Plaintiffs have found that voicing concerns to employees and management, making phone calls, and writing letters is futile. In their experience the only way to spur action and achieve the accessibility required under the law is to file matters, like this one, and pray for the relief contained herein.

36. Mr. Meggs is without adequate remedy at law and is suffering irreparable harm, including bodily injury consisting of emotional distress, mental anguish, suffering, and humiliation. Considering the balance of hardships between the Plaintiffs and the Defendant, a remedy in equity is warranted. The public interest would not be disserved by the issuance of a

permanent injunction.

37. Pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505, Plaintiffs are entitled to recovery of attorney's fees, costs, and litigation expenses from the Defendant.

38. Pursuant to 42 U.S.C. § 12188(a)(2), this Court is provided with authority to grant Mr. Meggs injunctive relief, including an order to require the Defendant to alter the Subject Property and make the Subject Property readily accessible and useable to the Plaintiffs and all other persons with disabilities as defined by the ADA; or by closing the Subject Property until such time as the Defendant cure their violations of the ADA.[10]

**WHEREFORE,** Plaintiffs respectfully request:

    A. The Court issue a Declaratory Judgment determining that the Defendant is in violation of Title III of the ADA.

    B. Injunctive relief against the Defendant including an order to make all readily achievable alterations to the Subject Property; or to make the Subject Property readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence

---

[10] 42 U.S.C. § 12188(b)(2)

of auxiliary aids and services.

C. An award of attorney fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205.

D. Such other relief as the Court deems just and proper and is allowable under Title III of the Americans with Disabilities Act.

## COUNT II
### Violation of Colorado Anti-Discrimination Act,
### C.S.R. § 24-34-601 *et seq*. (CADA)

39. The Plaintiffs reallege and incorporate by reference all of the allegations contained in all of the preceding paragraphs.

40. John Meggs is a disabled individual as defined by C.S.R. § 24-34-301(2.5).

41. Defendant's facility is a place of public accommodation as defined by C.S.R. § 24-34-601(1).

42. Colorado law provides that no person shall be discriminated against in regard to public accommodations on the basis of disability.[11]

43. Pursuant to C.S.R. § 24-34-602(1) Mr. Meggs is authorized to bring a private action in any court of competent jurisdiction and to receive monetary damages.

44. Pursuant to C. S. R. § 24-34-602(1)(b) a person who violates provisions of the CADA based on a disability "shall be subject to the provisions of section 24-34-802." C. S. R. § 24-34-802 allows for a court order requiring compliance with the provisions of the violated section of the CADA, recovery of actual monetary damages, a statutory fine not to exceed three thousand five hundred dollars ($3,500.00), and an award of attorney fees and costs.

---

[11] C.S.R. § 24-34-601(2)(b)

45. Pursuant to C.S.R. § 24-34-604 claims alleging violations of the CADA must be brought within sixty days (60) of the alleged discriminatory act, Mr. Meggs has done so here.

46. Pursuant to 3 CCR 708-1:60.1(A); the CADA, "is substantially equivalent to Federal law, as set forth in the Americans with Disabilities Act, as amended, and the Fair Housing Act concerning disability."

47. Pursuant to C.S.R. § 24-34-802(4); "a court that hears civil suits pursuant to this section shall apply the same standards and defenses that are available under the federal 'American with Disabilities Act of 1990', 42 U.S.C. § 12101 et seq., and its related amendments and implementing regulations."

48. As set forth above, Defendant has violated the Colorado Anti-Discrimination Act by denying Mr. Meggs, and all other disabled individuals, full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations afford to the public at a place of public accommodation.

49. As a result of the aforementioned discrimination through repeated exposure to architectural barriers and other harmful conditions, Mr. Meggs has sustained bodily injury in the form of emotional distress, mental anguish, suffering and humiliation.

**WHEREFORE**, Plaintiffs respectfully request:

    A. That this Court assume jurisdiction.

    B. An injunction ordering Defendant to comply with the ADA and the CADA.

    C. An award of monetary damages to Mr. Meggs; to the maximum extent permitted.

    D. Reasonable attorney fees and costs.

    E. An Order requiring the Defendant to maintain the required accessible

features at the Subject Property.

F.  Other relief that this Court deems just and proper; and is allowable under the CADA.

Respectfully submitted on this 25th day of May 2022,

*/s/ Jon G. Shadinger Jr.*
Jon G. Shadinger Jr., Esq.
Shadinger Law, LLC
717 E. Elmer Street, Suite 7
Vineland, NJ 08360
Phone (609) 319-5399
Fax (314) 898-0458
js@shadingerlaw.com
*Attorney for Plaintiffs, John Meggs and Access 4 All, Inc.*